[No. 24984.   Department One.   April 18, 1934.]

JAMES McRAE, *Respondent,* v. LEWIS LEVY, *Appellant.*[1]

*Albert E. Kaye, Grinstead, Laube, Laughlin &
Meakim,* and *Arthur Grunbaum,* for appellant.

*Robbins & Rickles,* for respondent.

MAIN, J.—In the complaint in this case, there are
four causes of action, separately stated. In the first,

[1]Reported in 31 P. (2d) 1028.

recovery is sought for the balance due for services rendered. The second, third and fourth are on assigned claims for merchandise. The defendants were Victor's, Inc., Frank Victor, Frank Victor, Jr., Joseph Mayer and Lewis Levy.

The trial was to the court without a jury, and resulted in findings of fact from which the court concluded that the plaintiff was entitled to judgment upon each of his causes of action against the defendants Victor's, Inc., and Lewis Levy, but that he was not entitled to a judgment against the other defendants. Judgment was entered against the defendants Victor's, Inc., Lewis Levy and the National Surety Company, a corporation, surety upon the bond of Lewis Levy, in the sum of four hundred dollars and interest on the first cause of action, and $626.21, together with interest, upon the second, third and fourth causes of action, from which the defendant Lewis Levy appeals.

The facts essential to be stated are these: Frank J. Victor, Inc., was a corporation engaged in the retail jewelry business in the city of Seattle. October 1, 1931, the corporation was adjudged a bankrupt in the Federal court, and thereafter one Joseph Mayer was named trustee. The trustee was authorized to continue the business until October 29, 1931.

June 17, 1932, the trustee, having been authorized to sell the assets at private sale, received a bid therefor of fifteen thousand dollars, made on behalf of Frank J. Victor and his associates. Of the sum bid, fifteen hundred dollars was paid. At about this time, Victor's, Inc., was incorporated for the purpose of taking over the stock and continuing the business.

After receiving the bid, Mayer, the trustee, turned the stock over to Victor's, Inc., and reported to the bankruptcy court that the fifteen thousand dollars had been paid. Victor's, Inc., entered into a contract with

the respondent, James McRae, by which he was to conduct a sale of the stock, and agreed to pay him a certain compensation. The respondent, for a number of weeks, conducted such sale, and during this time purchased from three different vendors, upon consignment, certain merchandise, a part of which was sold.

June 27, 1932, it having been discovered that the fifteen thousand dollar price had not been paid, except the fifteen hundred dollars, Mayer, the trustee, resigned, and one B. T. Woods was named trustee. Woods did not take over the stock of merchandise, but apparently concluded, as appears from the evidence, to rely upon the prior trustee's bond to make good the balance of the purchase price which that trustee had reported had been fully paid.

After Woods was named, Mayer, the former trustee, took possession of the stock, and sometime later he and Victor's, Inc., sold the same to the appellant, Lewis Levy, for the sum of eleven thousand dollars, and the check for that sum was turned over to Mayer. Mayer used one thousand dollars thereof in settling some claims against the estate in bankruptcy, and a check for the other ten thousand dollars he tendered Woods, the new trustee, and Woods refused to accept it.

When the stock was sold to Levy, a bill of sale was made, which was signed by Joseph Mayer. The affidavit accompanying this sale in bulk listed as creditors the assignors of the claims which form the basis of the second, third and fourth causes of action, but it did not list the respondent as such creditor. No part of the consideration received was applied to pay the creditors named. Promptly, the present action was begun.

The new trustee, Woods, refused to have anything to do with the sale to Levy, except that later he petitioned the bankruptcy court for a show cause order

directed to the various creditors requiring them to appear and present their claims. None of the creditors involved in the action now before us appeared in response to the notice. Upon that hearing, the bankruptcy court, in effect, determined that the ten thousand dollars should be applied upon the fifteen thousand dollar purchase price of the property, and to this extent it would relieve Mayer's bond. Subsequently, as appears from the evidence, an action was begun in the Federal court and a judgment entered against Mayer and his bondsman for the balance.

It is true that, at the time of the trial of the present action, a motion for new trial was pending in that court, but the fact that the action was brought is confirmatory of the attitude of Woods from the beginning to rely upon Mayer's bond and not take over the stock of goods. Indeed, he could not well, in justice to the creditors, have taken over the stock, because, subsequent to the time that Mayer reported the payment of the fifteen thousand dollars and the time when Woods was appointed, a considerable portion of the stock had been sold.

Upon this appeal, two principal contentions are made: First, that the sale to the appellant was a judicial sale and not a sale in bulk; and second, conceding that the sale was one in bulk, the respondent and his assignors were not of the class of creditors privileged to attack the same.

It will be admitted that, if the sale to the appellant was, in fact and law, a judicial sale, the sales in bulk law of this state (Rem. Rev. Stat., § 5832 et seq.) would not apply. We see nothing in the evidence of substantial moment to sustain the position that the sale to the appellant was a judicial sale. Woods, the then trustee, refused to have anything to do with it, and declined to accept the check. When he finally peti-

tioned the bankruptcy court to dispose of the check, it was applied upon the indebtedness of Mayer and his bondsman. The sale was by Mayer, who went into possession, as above stated, and Victor's, Inc. If there was any confirmation by the bankruptcy court, it would be an implied confirmation of sale to Mayer and Victor's, Inc. The fact that the bankruptcy court concluded that the ten thousand dollars should be applied as above stated, was not a confirmation of the sale to the appellant by that court.

Upon the question as to whether the respondent and his assignors could attack the sale, we shall first consider the status of the respondent himself as a creditor. He did not furnish merchandise, but rendered services, and by this action seeks to recover the balance due therefor. Section 5832, Rem. Rev. Stat., which is one of the sections of the bulk sales law, provides that, when there is a sale which comes under that law, the vendor shall make a statement in writing

" . . . giving the names and addresses of all of the creditors of the vendor, to whom the vendor may be indebted, for or on account of any goods, wares or merchandise, and/or fixtures and equipment, used in and about the business of the vendor, purchased upon credit, or for or on account of money borrowed to carry on the business of the vendor, of which the goods, wares and merchandise, and/or fixtures and equipment, bargained for or purchased, are a part, together with the amount of indebtedness due and owing and to become due and owing, by the vendor, to each of said creditors; . . ."

It will be observed that a creditor on account of the personal services rendered is not within either the language or the intent of the statute. Nowhere is it provided that one who renders services for which he has not been paid is entitled to the protection of the bulk sales law. It is clear that the respondent, upon

his first cause of action, did not have a right to a judgment against the appellant. Cases construing the act of 1901 (Laws of 1901, chapter CIX, p. 222), wherein it was provided that the written statement should contain the names and addresses "of all the creditors of said vendor," are not here applicable, because the prior act was amended by the legislature in 1925 (Laws of 1925, Ex. Ses., chapter 135, p. 342), and the law is now as provided in Rem. Rev. Stat., § 5832, *supra.*

As to the assigned claims which were for the portion of consigned goods which had been sold and not paid for, the respondent was entitled to recover. The goods upon consignment not sold were returned, but, as to the portion sold, a debt at the time of the sale was created for merchandise. The statute says: "To whom the vendor may be indebted for or on account of any goods, wares or merchandise." The case of *Ramsay & Son, Ltd. v. Turcotte,* 7 D. L. R. 27, will not sustain the appellant's contention with respect to the consigned goods actually sold, because the bulk sales law of that jurisdiction is very different in its terms from the statute of this state.

The judgment upon the first cause of action will be reversed, and upon the second, third and fourth causes of action, it will be affirmed.

BEALS, C. J., MITCHELL, STEINERT, and BLAKE, JJ., concur.